# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEIGH BROWN )<br>4711 Myers Lane )<br>Harrisburg, NC 28075, )<br> )<br>LEIGH BROWN FOR CONGRESS )<br>4711 Myers Lane )<br>Harrisburg, NC 28075, )<br> )<br>LEIGH BROWN & ASSOCIATES )<br>24 Cabarrus Avenue East )<br>Concord, NC )<br> )<br>            Plaintiffs, )<br> )<br>      v. )<br> )<br>FEDERAL ELECTION COMMISSION )<br>1050 First Street, NE )<br>Washington, DC 20463, )<br>            Defendant. ) | Civil Case No. |

## VERIFIED COMPLAINT

Plaintiffs, Leigh Brown, Leigh Brown & Associates, and Leigh Brown for Congress ("Plaintiffs"), bring this verified complaint for declaratory and injunctive relief, and complain as follows:

### INTRODUCTION

1. This is a pre-enforcement, as-applied challenge to a Federal Election Campaign Act definitional Statute at 52 U.S.C. 30104(f)(3)(A)(i) and the Federal Election Commission's parallel

implementing regulations at 11 C.F.R. §§ 100.29 ("electioneering communications"), 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4) (electioneering communications disclaimer and reporting requirements), which impact Plaintiffs' ability to engage in constitutionally protected speech.

2. This case challenges a law that, as interpreted and applied by the Federal Election Commission ("FEC"), abridges the freedom of speech and association guaranteed under the First Amendment to the United States Constitution. These challenges are brought as applied against 52 U.S.C. 30104(f) and its implementing regulations.

3. The First Amendment to the United States Constitution Protects Plaintiffs' right to run for federal office and to continue to advertise her longstanding business without unwarranted governmental intrusion and restrictions. Wishing to exercise that right, Plaintiffs would like to engage in certain speech and know in advance the compliance obligations under the Federal Election Campaign Act ("FECA").

4. Disclosure and disclaimer requirements are subject to "exacting scrutiny." *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 366-67 (2010) ("The Court has subjected [disclosure] requirements to 'exacting scrutiny'"); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (per curiam); *accord Doe v. Reed*, 561 U.S. 186, 187-88 (2010). As a result, there must be a "'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Citizens United*, 558 U.S. at 366-67 (quoting *Buckley*, 424 U.S. at 64, 66).

5. To survive exacting scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights. *Davis v. FEC*, 554 U.S. 724, 744 (2008) (citing *Buckley*, 424 U.S. at 68).

6. One governmental interest cited in Citizens United is "'[P]rovid[ing] the electorate with information' about the sources of election-related spending." *Citizens United*, 558 U.S. at 315 (quoting *Buckley*, 424 U.S. at 66).

7. In this case, Plaintiffs submit that their proposed advertisements are not election-related because they do not constitute "electioneering communications" involving "clearly identified candidates." Instead, they are commercial in nature, constituting pleas for business as for any other realty firm.

8. Exacting scrutiny is not simply a way to force judicial approval of government regulations regarding the First Amendment. *See Buckley*, 424 U.S. at 64, 66 (describing exacting scrutiny as a "strict test" requiring more than "a mere showing of some legitimate governmental interest"); *Elrod v. Burns*, 427 U.S. 347, 363 (1976) (noting the "[s]tate may not choose means that unnecessarily restrict constitutionally protected liberty" nor choose a regulatory scheme broadly stifling speech if the state has available a "less drastic way of satisfying its legitimate interests") (quoting *Kusper v. Pontikes*, 414 U.S. 51, 59 (1973) (internal quotation marks omitted)). Laws that are "no more than tenuously related to the substantial interests disclosure serves . . . fail exacting scrutiny." *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 204 (1999) (internal marks omitted).

9. In 1976, the U.S. Supreme Court explained in Buckley v. Valeo that a "clearly identified candidate" under the FECA has a very specific meaning:

> Section 608 (e)(2) defines "clearly identified" to require that the candidate's name, photograph or drawing, or other unambiguous reference to his identity appear as part of the communication. Such other unambiguous reference would include use of the candidate's initials (e.g., FDR), the candidate's nickname (e.g., Ike), his office (e.g., the President or the Governor of Iowa), or his status as a candidate (e.g., the Democratic Presidential nominee, the senatorial candidate of the Republican Party of Georgia).

*Buckley*, 424 U.S. at 43 n. 51; *see also FEC v. Nat'l Org. for Women*, 713 F. Supp. 428, 433 (D.D.C. 1989) ("An explicit and unambiguous reference to the candidate must be mentioned in the communication . . . .").

10. This language has since been incorporated into federal regulations 11 C.F.R. §§ 100.29, 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4), and federal statute, 52 U.S.C. 30104(f)(3)(A)(i).

11. In 2002, Congress enacted The Bipartisan Campaign Reform Act of 2002 ("BCRA"), defining the term "electioneering communication" as:

> any broadcast, cable, or satellite communication which – (I) *refers to a clearly identified candidate for Federal office*; (II) is made within – (aa) 60 days before a general, special, or runoff election for the office sought by the candidate; or (bb) 30 days before a primary or preference election, or a convention or caucus of a political party that has authority to nominate a candidate, for the office sought by the candidate; and (III) in the case of a communication which refers to a candidate for an office other than President or Vice President, is targeted to the relevant electorate.

52 U.S.C. 30104(f)(3)(A)(i) (emphasis added).

12. Under the FECA, any person who makes an electioneering communication is subject to a number of disclosure, disclaimer, and reporting obligations with the Federal Election Commission.

13. The Supreme Court in *McConnell v. FEC*, 540 U.S. 93 (2003), upheld these disclosure and disclaimer rules against a facial challenge because, as the Court explained, they were "both easily understood and objectively determinable":

> [W]e observe that new FECA § 304(f)(3)'s definition of "electioneering communication" raises none of the vagueness concerns that drove our analysis in *Buckley*. The term "electioneering communication" applies only (1) to a broadcast (2) clearly identifying a candidate for federal office, (3) aired within a specific time period, and (4) targeted to an identified audience of at least 50,000 viewers or listeners. These components are both easily understood and objectively determinable.

*McConnell*, 540 U.S. at 194.

14. FECA also exempts four categories of communication from the statutory definition, including "any other communication exempted under such regulations as the Commission may promulgate . . . to ensure appropriate implementation of this paragraph, except that under such regulation a communication may not be exempted if it meets the requirements of this paragraph and is described in section 30101(20)(A)(iii) of this title." 52 U.S.C. § 30104(f)(3)(B)(iv). The provision referenced refers to "a public communication that refers to a clearly identified candidate for Federal office . . . and that promotes or supports a candidate for that office, or attacks or opposes a candidate for that office (regardless of whether the communication expressly advocates a vote for or against a candidate)." 52 U.S.C. §30101(20)(A)(iii).

15. It is well established that Congress' motivation in enacting the "electioneering communications" provisions was to regulate so-called "sham issue ads" that were paid for with non-federal funds. There is no suggestion anywhere in the legislative record that Congress intended to include *bona fide* commercial advertisements.

16. In the first electioneering communications rulemaking, the Commission noted that "the principal Congressional sponsors of BCRA explained the exemption authority would 'allow the Commission to exempt communications that 'plainly and unquestionably' are 'wholly unrelated' to an election and do not 'in any way' support or oppose a candidate." Final Rule on Electioneering Communications, 67 Fed. Reg. 65,190, 65,198 (October 23, 2002). In 2002, the Commission considered adopting a regulatory exemption for business advertisements, specifically, "an exemption for communications that refer to a clearly identified candidate in the context of promoting a candidate's business, including a professional practice, for example." *Id*. at 65,202. The Commission, however, declined to adopt a business advertisement exemption, explaining:

> The Commission has determined that a narrow exemption for such ads is not appropriate and cannot be promulgated consistent with the Commission's authority

under 2 U.S.C. 434(f)(3)(B)(iv). Based on past experience, the Commission believes that it is likely that, if run during the period before an election, such communications could well be considered to promote or support the clearly identified candidate, even if they also serve a business purpose unrelated to the election.

*Id.*

17. In 2004, the Commission determined that it could consider through the advisory opinion process, on a case-by-case basis, whether particular advertisements referenced a clearly identified candidate or not. See Advisory Opinion 2004-31 (Russ Darrow Group, Inc.) at 4 ("The decision not to adopt a blanket exemption for such communications, however, does not preclude the Commission from making a determination that the specific facts and circumstances of a particular case indicate that certain advertisements do not refer to a clearly identified Federal candidate and, hence, do not constitute electioneering communications."). In the Russ Darrow matter, the Commission concluded that commercial advertisements for Russ Darrow-branded car dealerships did not refer to a clearly identified candidate for federal office, and thus, were not "electioneering communications." Rather, under "the factual circumstances presented," "the use of the name 'Russ Darrow' refers to a business or to another individual who not a candidate." Advisory Opinion 2004-31 at 3. The Commission explained:

> The Commission concludes that your proposed advertisements refer to RDG's [Russ Darrow Group, Inc.] car dealerships or Russ Darrow III, and not to the Candidate. First, the Candidate himself does not speak or appear on screen in any of the advertisements. Second, another individual, Russ Darrow III, does speak and appear in the advertisements. You indicate that he, not the Candidate, has been the public face of the company for more than ten years. Third, "Russ Darrow" is part of the name of all of RDG's dealerships, which RDG has worked for a decade to develop as a brand name for all its dealerships. Finally, while the name "Russ Darrow" is used throughout the proposed advertisements, most of these references include the full name through which a particular dealership does business (e.g., Russ Darrow Toyota, Russ Darrow Kia, Russ Darrow Cadillac). While a couple of the proposed advertisements also include a single reference to "Russ Darrow," rather than the full name through which the dealership does business, these references, taken together with the other references in the advertisement, also refer

to the business entity and not to the Candidate. Therefore, the Commission concludes that RDG's television and radio advertisements do not refer to a clearly identified candidate under 11 CFR 100.29(b )(2).

*Id.*

18. In 2012, the Commission considered a request to grant an exemption for a commercial advertisement that everyone agreed included references to a clearly identified candidate. In Advisory Opinion Request 2012-20, Markwayne Mullin sought an electioneering communication exemption for televised business advertisements for his company, Mullin Plumbing, Inc. The Commission was unable to approve a response, but the applicable legal standard appears to be clear.

19. First, a majority of Commissioners agreed that the Commission had the authority to grant an exemption through the advisory opinion process, although the issue was not settled definitively. Two Commissioners voted to approve a draft that would have granted the exemption sought, while two other Commissioners wrote, "[w]e agree that the Commission may grant such exemptions," while noting that there was legislative history in support of that position. Statement on Advisory Opinion Request 2012-20 (Mullin) of Vice Chair Ellen L. Weintraub and Commissioner Cynthia L. Bauerly. Vice Chair Weintraub and Commissioner Bauerly wrote: "We are prepared to revisit this issue where the facts presented warrant an exemption." *Id*.

20. Second, the path to concluding that an exemption is warranted requires showing that the communications at issue are "plainly and unquestionably not related to the election." *Id*.; see also Advisory Opinion 2012-20, Response Draft B. In 2012, two Commissioners concluded that "[t]he Mullin Companies have become intertwined with the Mullin campaign to the point where it can no longer be said that the companies' ads are plainly and unquestionably not related to the election.'" *Id.* These Commissioners also noted commenters claimed to have "difficulty

distinguishing between the Mullin campaign literature and the Mullin Companies' ads" and that "it seemed that the Mullin Companies' ads had become more frequent since Mr. Mullin began running for Congress." *Id*. While the former comment may have been traceable to an opposing candidate, and the latter comment was not substantiated in any way, we do not believe either issue is present in this matter.

21. This case presents just the opposite circumstance.

22. On April 11, 2019 the FEC considered but failed to grant affirmative responses to any of the advertisements presented in an advisory opinion request by Plaintiffs. The request sought a declaration that the proposed communications would not be deemed to refer to "clearly identified candidates," and therefore not be electioneering communications.

23. Plaintiff Leigh Brown & Associates' planned advertisements, attached in the Request for Advisory Opinion (Exhibit 1), filed on March 21, 2019 (just eight days after becoming a candidate) consist of current advertisements promoting Leigh Brown & Associates real estate business, and a proposed alternative version of the advertisements.

24. Plaintiff Leigh Brown is also a candidate for election in the current special election being held in North Carolina's Ninth Congressional District, with a special primary election on May 14.

25. Accordingly, since the advertisements will be aired during the electioneering communication window for the upcoming special primary election on May 14 which begin Sunday, April 14, 2019, Ms. Brown sought the FEC's guidance on the application of the statute and regulations to the advertisements and proposed alternative advertisements.

26. The current advertisements at issue here present circumstances where the statute is unconstitutional as applied, or are entitled to exemption from the statute.

27. The proposed alternative advertisements are not electioneering communications, and the Plaintiffs seek a pre-enforcement declaratory judgment on the proposed advertisements.

28. Because of the FEC's failure to faithfully apply the FECA and controlling Supreme Court opinions, Plaintiff Leigh Brown & Associates may need to refrain from speech in which it had previously engaged, alter its means and methods of communications, or change the existing and proposed speech to comply with FECA content, disclaimer and reporting requirements, all of which are because of a legitimate fear of civil and criminal enforcement by the government.

29. Plaintiff Leigh Brown & Associates is presently stymied in its ability to advertise commercially and thus is cut off from its lifeblood income.

30. Plaintiffs seek a declaratory judgment from this court (a) finding 52 U.S.C. 30104(f)(3)(A)(i) and the Federal Election Commission's parallel implementing regulations at 11 C.F.R. §§ 100.29 ("electioneering communications"), 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4) (electioneering communications disclaimer and reporting requirements) as applied to Plaintiff's current communications are either unconstitutional as applied or entitled to and exemption, and a declaratory judgment that Plaintiffs' proposed alternative advertisements are not subject to this statutory regime at all.

## JURISDICTION AND VENUE

31. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 2201 as a challenge arising under the First Amendment to the Constitution of the United States, the judicial review provisions of the APA, 5 U.S.C. §§ 702-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

32. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(c) because Defendant is an entity of the United States Government.

**PARTIES**

33. The FEC is the federal agency charged with enforcement of the Federal Election Campaign Act and is located in Washington, D.C.

34. Plaintiff Leigh Brown, a first-time federal candidate, is a partner with RE/MAX and the President and Chief Executive Officer of Leigh Brown & Associates.

35. Plaintiff Leigh Brown & Associates is a for-profit business entity that was incorporated in North Carolina under the name Mallard Creek Properties, Inc. on July 25, 2003. Leigh Brown & Associates provides real estate agent services in and around the Charlotte area in North and South Carolina. A total of eight other individuals work with Leigh Brown & Associates - four real estate agents and four administrative staff members - either as employees or independent contractors.

36. Plaintiff Leigh Brown for Congress is the candidate campaign committee for Ms. Brown's candidacy for Congress in North Carolina's Ninth Congressional District.

**STATEMENT OF FACTS**

37. For the past 13 years, Ms. Brown has aired radio advertisements publicizing Leigh Brown & Associates. Currently, all of these radio advertisements are run exclusively on WBT 1110, a commercial AM radio station serving the Charlotte metropolitan area, which includes parts of North Carolina and South Carolina. Leigh Brown & Associates has an annual contract with WBT to air her advertisements (Ms. Brown's current contract was entered into with Entercom Charlotte WBT AM/FM in December 2018 and covers calendar year 2019. The contract specifies 706 broadcast spots for $48,204, or approximately 13.5 airings per week, further divided into a series of daily time ranges.) Ms. Brown develops the content of the advertisements herself without the use of a media production vendor, and she typically records two radio advertisements at a time at WBT's facilities. The two advertisements are then broadcast on a rotating basis. The length of time

a particular advertisement remains on the air varies, but Ms. Brown typically creates and records new advertisements every 60 to 90 days. This radio advertising is a core component of Ms. Brown's efforts to generate business for herself and the other agents on her real estate team. At least 10% of her annual commission revenue is attributable to clients acquired as a result of the radio advertising. Accordingly, Ms. Brown spends approximately $50,000 on radio advertising each year.

38. The specific content of the radio advertisements that Ms. Brown runs has varied over the years, but ads have followed a similar template. Advertisements generally are 60 seconds in length, and typically feature discussion of a real estate issue specific to the Charlotte real estate market (e.g., local property values and trends in housing prices). The advertisements typically note how many houses her team sells and consistently include two closing slogans: "I'm interviewing for a job I want to be your realtor" and "There is a difference when you call Leigh Brown." the past several years.

39. If Ms. Brown is unable to advertise for her business during the electioneering communications window, it will have a detrimental impact on her real estate firm and the employees/contractors who rely on it for their livelihood. Therefore, she seeks to continue airing the two radio advertisements, during the electioneering communication window for the upcoming special primary election on May 14. Ms. Brown began airing these specific commercial advertisements in the Charlotte area on or about March 5, 2019, prior to her becoming a federal candidate. As of April 14, these advertisements will satisfy the basic statutory definition of "electioneering communication." Ms. Brown does not intend to change the content or advertising volume of these two advertisements during the rapidly approaching electioneering communications window.

40. The content of these two advertisements is consistent with the format of past advertisements. Ms. Brown's political campaign has engaged an entirely separate, political media vendor for campaign advertising and strategy purposes and that vendor played no role in the creation or airing of the commercial advertisements for Ms. Brown's real estate business.

41. Ms. Brown requested an advisory opinion from the FEC as to whether the un-altered and alternate versions of both Advertisements #1 and #2 would constitute "electioneering communication" when aired during the upcoming pre-primary period.

42. The FEC considered but did not approve any of the draft advisory opinions. The FEC voted 2-2 on Agenda Document No. 19-14-B (attached hereto as Exhibit 2), 3-1 against on Agenda Document No. 19-14-A (attached hereto as Exhibit 3), and 3-1 in favor of a motion to approve the responses to Questions 2 and 3 in Agenda Document 19-14-A (Ex. 3). The affirmative vote of four members of the FEC is required to render and advisory opinion under FECA. See 52 U.S.C. §§30106(c), 30107(a)(7); *see also* 11 C.F.R. §112.4(a). Thus, the FEC was unable to render an opinion in this matter.

### COUNT 1

**Declaratory Judgment That the FEC's Finding That Advertisement #1 and #2, As They Stand, Constitute Electioneering Communications Is Unconstitutional As Applied Or That the Advertisements are Entitled to an Exemption.**

43. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

44. The application of the statutory definition of "clearly identified" candidate at 52 U.S.C. 30104(f)(3)(A)(i) and the Federal Election Commission's parallel implementing regulations at 11 C.F.R. §§ 100.29, 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4), to Advertisements #1 and #2 is

inconsistent with law and severely burdens Plaintiffs' right to freedom of speech free of government regulation

45. The two radio advertisements are "plainly and unquestionably not related to any election."

46. First, Ms. Brown has aired similar advertisements exclusively for the purpose of promoting her real estate business for years prior to her declaration of candidacy, and these two advertisements are no different in form or purpose than those she has previously aired.

47. Second, the Advertisements do not promote or support Ms. Brown's candidacy, or attack or oppose any other federal candidate.

48. Accordingly, the FEC should have concluded that these communications are exempt from the definition of electioneering communication.

49. As applied by the FEC's draft opinions (Ex. 2, 3), 52 U.S.C. 30104(f)(3)(A)(i) combined with 11 C.F.R. §§ 100.29, 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4), are the functional equivalent of a speech ban imposed by federal statute against individuals who happen to own a business sharing their name (a not uncommon occurrence) and simultaneously seek federal office who do not want and are not required to comply with the burdens of the disclaimer, disclosure and reporting requirements of the electioneering communications rules for their traditional business advertising.

50. But for operation of the law, Plaintiffs are prepared to run these advertisements and other communications similar to them consistently through the year.

51. This statutory scheme cannot constitutionally apply to these advertisements as applied, in violation of the First Amendment.

52. In the alternative, this Court should find that the current advertisements are entitled to an exemption from the statute for the reasons set forth in Questions 2 and 3 of Draft A of the Advisory Opinion, a position clearly supported by three of the four current FEC Commissioners.

## COUNT 2
### Declaratory Judgment That the Proposed Alternative Advertisements Do Not Constitute Electioneering Communications

53. Plaintiff reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

54. Plaintiffs seek a Declaratory Judgment from this Court stating that the proposed Alternative Advertisements do not constitute electioneering communications.

55. The two alternative radio advertisements are "plainly and unquestionably not related to any election."

56. Ms. Brown has aired similar advertisements exclusively for the purpose of promoting her real estate business for years prior to her declaration of candidacy, and these two advertisements are no different in form or purpose than those she has previously aired.

57. The Alternative Advertisements do not promote or support Ms. Brown's candidacy, or attack or oppose any other federal candidate.

58. The two alternative radio advertisements do not mention or contain references to any clearly identified candidate for federal office.

59. Accordingly, the FEC should have concluded that these communications do not fall under the definition of an electioneering communication.

60. Plaintiffs are entitled to a declaratory judgment that airing the Alternative Advertisements #1 and #2 during the electioneering communication window do not constitute "electioneering communications" under FECA.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1. A declaratory judgment that the application of 52 U.S.C. 30104(f)(3)(A)(i); 11 C.F.R. §§ 100.29, 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4) to Plaintiffs' proposed unaltered Advertisements is unconstitutional and void as applied; or in the alternative a declaratory judgement the current advertisements are entitled to an exemption;

2. A declaratory judgment that the proposed Alternative Advertisements do not constitute "Electioneering Communications" under 52 U.S.C. 30104(f)(3)(A)(i); 11 C.F.R. §§ 100.29, 104.5(j), 104.20, 114.10(b)(2), 110.11(a)(4);

3. A preliminary and permanent injunction enjoining Defendant FEC from enforcing 2 U.S.C. §§ 431(18) and 434(f), as well as any applicable rules and regulations regarding those provisions, against Plaintiffs;

4. An award of nominal damages of $1 for the violation of Plaintiffs' constitutional rights;

5. Costs and attorney's fees pursuant to any applicable statute or authority;

6. Any other relief that the Court deems just and appropriate.

Date:  April 11, 2019                                         Respectfully submitted,

/s/Jason Torchinsky
Jason Torchinsky (D.C. Bar No. 976033)
jtorchinsky@hvjlaw.com
J. Michael Bayes (D.C. Bar No. 501845)
jmbayes@hvjlaw.com
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
Tel: (540) 341-8808
Fax: (540) 341-8809

*Counsel for Plaintiffs*

LEIGH BROWN & ASSOCIATES VERIFICATION

I, Leigh Brown, declare as follows:

1. I am the authorized agent of Leigh Brown & Associates

2. I have personal knowledge of Leigh Brown & Associates, and its operations, including those set out in this Complaint, and if called upon to testify, I would testify competently as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning Leigh Brown & Associates, are true and correct.

Executed this 11th day of April, 2019

_____
Leigh Brown & Associates
BY: Leigh Brown
ITS: Authorized Agent

LEIGH BROWN FOR CONGRESS VERIFICATION

I, Leigh Brown, declare as follows:

1. I am the authorized agent of Leigh Brown for Congress

2. I have personal knowledge of Leigh Brown for Congress, and its operations, including those set out in this Complaint, and if called upon to testify, I would testify competently as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning Leigh Brown for Congress, are true and correct.

Executed this 11th day of April, 2019

_____
Leigh Brown for Congress
BY: Leigh Brown
ITS: Authorized Agent

LEIGH BROWN VERIFICATION

I, Leigh Brown, declare as follows:

1. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning Leigh Brown, are true and correct.

Executed this 11th day of April, 2019

_____
Leigh Brown

## CERTIFICATE OF SERVICE

      I do hereby certify that, on this 11th day of April 2019, the foregoing Complaint was filed electronically with the Clerk of Court using the CM/ECF system. The following parties were served either electronically on April 11th or by USPS First Class Mail on April 12, 2019.

                                                /s/Jason Torchinsky
                                                Jason Torchinsky (D.C. Bar No. 976033)

Federal Election Commission
1050 First Street, NE
Washington, DC 20463

Attorney General William Barr
c/o Assistant U.S. Attorney of Administration
Justice Management Division
950 Pennsylvania Ave. NW
Room 1111
Washington, D.C. 20530

Jessie K. Liu
United States Attorney for the District of Columbia
Civil Process Clerk
555 4th St. N.W.
Washington, D.C. 20530